**MECCON, INC., et al., Appellants,**

v.

**UNIVERSITY OF AKRON, Appellee.**

[Cite as *Meccon, Inc. v. Univ. of Akron,* 182 Ohio App.3d 85, 2009-Ohio-1700.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–727.

Decided April 9, 2009.

Thompson Hine L.L.P., Peter D. Welin, and Andrew R. Fredelake, for appellants.

Richard Cordray, Attorney General, and William C. Becker and Lisa J. Conomy, Assistant Attorneys General, for appellee.

TYACK, Judge.

{¶ 1} This is an appeal from the Ohio Court of Claims. At issue is whether the Court of Claims has subject-matter jurisdiction over a competitive-bidding dispute between plaintiffs-appellants, Meccon, Inc., and Ronald R. Bassak ("Meccon"), and defendant-appellee, University of Akron.

{¶ 2} In April 2008, the University of Akron invited bids for the University of Akron's Football Stadium Project. Ohio's public-bidding laws require that contracts be awarded to the lowest responsive and responsible bidder. R.C. 153.08, 9.312. Meccon submitted a bid for the heating, ventilation, and air conditioning ("HVAC") contract. Another contractor, S.A. Comunale, submitted four bids for the project: three separate bids for the stand-alone prime-plumbing, fire-protection, and HVAC contracts, and a fourth combined bid for a package of the individual contracts.

{¶ 3} When the bids were opened, S.A. Comunale was the low bidder for each of the stand-alone plumbing, fire-protection, and HVAC contracts. Meccon's bid for the stand-alone HVAC package was the second lowest bid. Additionally, S.A. Comunale's combined bid was more than $1.2 million lower than the next lowest bid.

{¶ 4} After it discovered the large disparity in its low bids from the next lowest bidders, S.A. Comunale withdrew its combined bid and withdrew its stand-alone plumbing bid. Despite language in the bid documents themselves and statutory language that prohibits withdrawal of a bid "when the result would be the awarding of the contract on another bid of the same bidder," the University of Akron awarded the stand-alone HVAC and fire-protection contracts to S.A. Comunale. R.C. 9.31.

{¶ 5} On August 6, 2008, Meccon filed suit in the Court of Claims, seeking a temporary restraining order, a declaratory judgment, preliminary and permanent injunctive relief, damages for its bid-preparation costs, and other such damages and relief resulting from the University of Akron's failure to award the HVAC contract to Meccon.

{¶ 6} Before the court could hold an evidentiary hearing on the temporary restraining order ("TRO"), the University of Akron filed a motion to dismiss for lack of subject-matter jurisdiction. The university argued that an Ohio Supreme Court case limited disappointed bidders to injunctive relief only. The Court of Claims granted the motion, finding that Meccon's claim for bid-preparation costs and other money damages was not cognizable due to the decision in *Cementech, Inc. v. Fairlawn,* 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24. Without a legally cognizable claim for money damages, the complaint was for equitable relief only. Therefore, the Court of Claims decided that it lacked subject-matter jurisdiction. The Court of Claims then denied the motion for a TRO, dismissed the claim, and denied all remaining motions as moot. This appeal followed, with Meccon assigning as error the following:

1. The Trial Court erred when it dismissed Appellants' case for lack of Subject–Matter Jurisdiction.

2. The Trial Court erred when it failed to rule on Appellants' Motion for Temporary Restraining Order.

{¶ 7} We review an appeal of a dismissal for lack of subject-matter jurisdiction under a de novo standard of review. *Reynoldsburg City School Dist. Bd. of Edn. v. Licking Hts. Local School Dist.,* 10th Dist. No. 08AP–415, 2008-Ohio-5969, 2008 WL 4927406. The question we must decide is whether any cause of action cognizable by the forum has been raised in the complaint. Id. Here, the issue turns on whether Meccon's complaint states a legally cognizable claim for money damages, for without a claim for money damages, the Court of Claims lacks subject-matter jurisdiction.

{¶ 8} It is undisputed that Meccon's complaint requests bid-preparation costs and any additional costs and damages incurred due to the failure of the University of Akron to award the HVAC contract to Meccon. This court has concluded that if an action in the Court of Claims is one for money damages against the state coupled with a request for declaratory and injunctive relief, the appropriate forum is the Court of Claims. *Tiemann v. Univ. of Cincinnati* (1998), 127 Ohio App.3d 312, 318, 712 N.E.2d 1258. In *Tiemann,* the plaintiffs sought to enjoin the university from proceeding with a construction project that bypassed Ohio's public-works and bidding requirements. The plaintiffs stated in their complaint that their suit was without a claim for monetary damages, but this court found that the Court of Claims did have jurisdiction because the complaint asked for declaratory, injunctive, and "any further" relief. Id. at 319, 712 N.E.2d 1258.

{¶ 9} Some years later, the Ohio Supreme Court decided *Cementech. Cementech* came before the Ohio Supreme Court as a certified conflict. The issue before the court was:

Does the availability of injunctive relief, if timely filed but denied, preclude an award of lost profits in a municipal contract case?

*Cementech, Inc. v. Fairlawn,* 106 Ohio St.3d 1479, 2005-Ohio-3978, 832 N.E.2d 733.

{¶ 10} In the ensuing opinion, the Ohio Supreme Court held:

When a municipality violates competitive-bidding laws in awarding a competitively bid project, the rejected bidder cannot recover its lost profits as damages.

*Cementech, Inc. v. Fairlawn,* 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24, syllabus.

{¶ 11} At the trial level, the trial court had awarded Cementech its bid-preparation costs, and that award was not appealed. Consequently, the issue of whether a rejected bidder could recover its bid-preparation costs was not squarely before the Ohio Supreme Court. However, in resolving the certified conflict and holding that a rejected bidder cannot recover its lost profits as damages, the Ohio Supreme Court went further and stated, "[A] rejected bidder is limited to injunctive relief." Id. at ¶ 10.

{¶ 12} The Ohio Supreme Court then discussed the rationale for injunctive relief:

It is clear that in the context of competitive bidding for public contracts, injunctive relief provides a remedy that prevents excessive costs and corrupt practices, as well as protects the integrity of the bidding process, the public, and the bidders. Moreover, the injunctive process and the resulting delays serve as a sufficient deterrent to a municipality's violation of competitive-bidding laws.

Id. at ¶ 11.

{¶ 13} Meccon characterizes the Ohio Supreme Court's statement limiting relief as dicta beyond the scope of the syllabus and the narrow issue that was before the court. Meccon argues that this court should not interpret *Cementech* in such a way that an isolated statement on an issue that was not before the court would preclude recovery of bid-preparation costs.

{¶ 14} The University of Akron takes the position that the language and meaning of *Cementech* is clear and that the *only* relief available to a disappointed bidder is an injunction.

{¶ 15} Here, because *Cementech* precludes recovery for lost profits by an unsuccessful bidder, only Meccon's claim for its bid-preparation expenses remains

as a claim for money damages in the Court of Claims.[1] If bid-preparation expenses are not allowed as damages in this type of action, then the action must be dismissed for lack of subject-matter jurisdiction.

{¶ 16} The cases certified as being in conflict with the appellate decision in *Cementech* disallowed recovery for lost profits, but neither case discussed bid-preparation costs as an element of damages. The statement that an unsuccessful bidder is limited to injunctive relief is nearly identical in *Cementech* and *Cavanaugh Bldg. Corp. v. Bd. of Cuyahoga Cty. Commrs.* (Jan. 27, 2000), 8th Dist. No. 75607, 2000 WL 86554.

{¶ 17} In the other case cited as being in conflict with *Cementech*, the Court of Appeals for Trumbull County cited policy considerations that militate in favor of injunctive relief. The court stated:

> Thus, if we were to allow appellant to receive monetary damages, only the bidders would be protected because the public would have to pay the contract price of the successful bidder plus the lost profits of an aggrieved bidder. However, if injunction is the *sole* remedy, both the public and the bidders themselves are protected. Accordingly, we conclude that injunction is the *only* remedy available.

(Emphasis added.) *Hardrives Paving & Constr., Inc. v. Niles* (1994), 99 Ohio App.3d 243, 247–248, 650 N.E.2d 482. Again, the language in this case is quite similar to that used by the Ohio Supreme Court in *Cementech*.

{¶ 18} Despite the fact that the issue of recovery of bid-preparation costs was not part of the certified question, the Ohio Attorney General argued that damages for bid preparations should not be an available remedy to a disappointed bidder going against a public entity. In an amicus curiae brief filed in *Cementech*, the Attorney General stated:

> The Attorney General recognizes that the question of whether damages in the form of bid-preparation costs is awardable to a disappointed bidder was not presented to the Court in either the discretionary appeal or the certified conflict case here. However, it is appropriate to consider whether this measure of damages is proper, incident to deciding the correct form of relief for a disappointed bidder in a competitive bidding case. Accordingly, even though a decision on this point will not necessarily affect the trial court's judgment against Fairlawn for $3,725.54 in bid-preparation costs, the Attorney General urges the Court to address this issue as part of its overall analysis of what remedies are available to disappointed bidders. Or, in the alternative, the

---

1. It is possible that a claim for attorney fees might be available under R.C. 2335.39 if Meccon were a prevailing party. *Mechanical Contrs. Assn. of Cincinnati v. Univ. of Cincinnati*, 152 Ohio App.3d 466, 2003-Ohio-1837, 788 N.E.2d 670, ¶ 42.

Attorney General urges the Court to expressly note in its decision that the permissibility of awarding bid-preparation costs as damages is not decided (or endorsed) by this case.

{¶ 19} As noted above, the Ohio Supreme Court declined to speak to this issue directly. Instead, the court stated in its syllabus that "[w]hen a municipality violates competitive-bidding laws in awarding a competitively bid project, the rejected bidder cannot recover its lost profits as damages." *Cementech*, 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24.

{¶ 20} However, "[t]he law stated in a Supreme Court opinion is contained within its syllabus (if one is provided), and its text, including footnotes." S.Ct. R.Rep.Op. 1(B)(1). Thus, we find that the statement that "a rejected bidder is limited to injunctive relief," contained in the body of the opinion, is a statement of law intended by the court. *Cementech* at ¶ 10.

{¶ 21} On the other hand, S.Ct.Prac.R. IV(3)(B), dealing with certified-conflict cases, states:

In their merit briefs, the parties shall brief only the issues identified in the order of the Supreme Court as issues to be considered on appeal * * *.

{¶ 22} Since the issue of bid-preparation costs was not a factor in any of the cases certified for conflict, and because the Ohio Supreme Court limited its discussion to the issue of the availability of lost profits versus injunction, the issue of whether bid-preparation costs can be recovered was not before the court. Therefore, it is our understanding that the Ohio Supreme Court has yet to rule on this issue.

{¶ 23} The Ohio Supreme Court's discussion focused on the strong policy considerations in favor of injunctive relief, but these policy considerations make little sense in cases such as this where the only relief sought is for declaratory and injunctive relief and bid-preparation costs. In *TP Mechanical Contrs., Inc. v. Franklin Cty. Bd. of Commrs.*, 10th Dist. No. 08AP–108, 2008-Ohio-6824, 2008 WL 5381926, ¶ 22, this court specifically did not consider whether a contractor would be precluded from bringing an action for other types of relief such as bid-preparation costs.

{¶ 24} There are good public-policy reasons favoring such recovery. First, without some penalty, there is little deterrent to a public entity who fails to follow the competitive-bidding statutes. Second, contractors may be reluctant to bid on public projects when they suspect the competitive bidding will not be conducted fairly. Ultimately, refusal to bid harms the public as the pool of qualified bidders shrinks. Any harm to the public from these types of damages is de minimus when compared to the harm to the public from recovery of lost

profits. Allowing recovery of bid-preparation costs will serve to enhance the integrity of the competitive-bidding process.

{¶ 25} Other jurisdictions have similarly distinguished recovery of bid-preparation costs from recovery of lost profits. In *Kajima/Ray Wilson v. Los Angeles Cty. Metro. Transp. Auth.* (2000), 23 Cal.4th 305, 319, 96 Cal.Rptr.2d 747, 1 P.3d 63, the Supreme Court of California stated that a "majority of jurisdictions" allow recovery of bid preparation costs either by statute or case law. See id. at 320, 96 Cal.Rptr.2d 747, 1 P.3d 63, fn. 6. "These jurisdictions generally reason that while the competitive bidding statutes are enacted for the public's benefit, not the aggrandizement of the individual bidder, allowing recovery of bid preparation costs encourages proper challenges to misawarded public contracts by the most interested parties, and deters public entity misconduct." Id. We agree.

{¶ 26} For these reasons, we conclude that the Ohio Court of Claims does have subject-matter jurisdiction over Meccon's claims for bid-preparation costs and attorney fees. The first assignment of error is sustained.

{¶ 27} In its second assignment of error, Meccon argues that the trial court erred in failing to rule on Meccon's motion for a TRO. Understandably, the trial court did not rule on the motion when it determined that it lacked subject-matter jurisdiction over the case. Since we are remanding the case, the second assignment of error is overruled as moot.

{¶ 28} At oral argument, the court requested the parties to address the issue of whether this case is moot in light of this court's holding in *TP Mechanical Contrs*, 2008-Ohio-6824, 2008 WL 5381926. The university subsequently filed a motion to dismiss this appeal, and Meccon responded. In that case, this court concluded that in appeals involving construction, if the appellant fails to obtain a stay of execution of a trial court's ruling or an injunction pending appeal, and construction commences, the appeal is rendered moot. Id. at ¶ 20.

{¶ 29} That case explicitly left open the issue of the availability of other forms of relief. Because we have decided the first assignment of error in a way that makes certain damages available regardless of the need for an injunction, the case is not moot, and the motion to dismiss is denied.

{¶ 30} Based on the foregoing, we sustain the first assignment of error, overrule as moot the second assignment of error, deny the motion to dismiss, reverse the judgment of the Ohio Court of Claims, and remand the matter for further proceedings in accordance with this opinion.

Motion to dismiss denied,
judgment reversed,
and cause remanded.

FRENCH, P.J., and McGRATH, J., concur.