THE STATE EX REL. TEMPESTA *v.* CITY OF WARREN.

[Cite as *State ex rel. Tempesta v. Warren,*

128 Ohio St.3d 463, 2011-Ohio-1525.]

*Mandamus — Classified employee — R.C. 124.327 — Right to reinstatement following layoff — Collective-bargaining agreement — Back pay — Writ granted in part and denied in part.*

(No. 2010-1150 — Submitted February 15, 2011 — Decided April 6, 2011.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1}   This is an action for a writ of mandamus to compel respondent, city of Warren, Ohio, to reinstate relator, Frank M. Tempesta, to the city's Operations Department in the position of operations superintendent, and to award him back pay.  Because Tempesta has shown that he is entitled to the position, we grant the writ and order the city to appoint him to the operations superintendent position.  We deny the request for an award of back pay because Tempesta has not established the amount due with certainty.

### Facts

{¶ 2}   Tempesta was a classified employee for the city of Warren.  His job classification was "Director of Service Operations," within the "Director of Service Operations, Operations Superintendent, and Parks and Streets Supervisor" classification series.  The classified positions in this series are listed from the highest-ranking classification to the lowest-ranking classification, and Tempesta was in the highest-ranking classification as the director of service operations.

{¶ 3}   In early June 2009, because the city was experiencing financial difficulties, city officials notified the Warren Municipal Civil Service

Commission of the need to lay off city employees due to a lack of funds. There were only three supervisory employees in the city's Operations Department – Director of Service Operations Tempesta, Operations Superintendent David Mazzochi, and Parks and Streets Supervisor Leann O'Brien. Each of these employees was a full-time, permanent, classified employee of the city in June 2009; of the three, Tempesta had the least amount of continuous service with the city. By letter dated June 25, 2009, the city's director of public service and safety notified the civil service commission that Tempesta would be laid off because of the lack of funds.

{¶ 4} The city notified Tempesta on July 8, 2009, that he would be laid off from his employment with Warren, effective July 26, 2009, for lack of funds and advised him that he had the right to appeal the layoff to the municipal civil service commission as well as the "right to reinstatement for one (1) year from the effective date of this layoff." Consistent with the city's notice, Tempesta was laid off effective July 26, 2009. Tempesta appealed the civil service commission's verification of retention points for the supervisory employees in the Operations Department to the Trumbull County Court of Common Pleas, but he did not institute any other appeals in the common pleas court.

{¶ 5} In November 2008, the city had temporarily transferred O'Brien from her position as parks and streets supervisor in the city's Operations Department to the position of computer programmer in the city's data-processing department. In September 2009, the city reassigned O'Brien to the position of urban design and grants coordinator in the city's community-development department. At the same time, the city advised her that if and when funds became available, she would be reassigned to her position as parks and streets supervisor in the Operations Department.

{¶ 6} For 2010, the city was a party to a collective-bargaining agreement with the American Federation of State County and Municipal Employees

2

("AFSCME") Local 2501 and AFSCME Ohio Council 8, AFL-CIO. Neither Tempesta nor the position of director of service operations that he held at the time of his layoff was covered by the agreement. The other positions in his classification series — operations superintendent and parks and streets supervisor — were covered by the agreement.

{¶ 7} Article 19 of the collective-bargaining agreement outlines a grievance procedure concluding in arbitration, and Article 21 addresses promotions. Article 21 provides that the senior bargaining-unit member will be promoted when a job opening in the bargaining unit is posted:

{¶ 8} "The City agrees to post any job openings, on all Union bulletin boards, occurring within the bargaining unit for a period of ten (10) working days after the City determines there is a vacancy. The qualified senior bargaining unit member shall be promoted. If no qualified bargaining unit member bids, the Director of Public Service and Safety may fill the position at his/her discretion."

{¶ 9} Neither Article 21 nor any other provision in the collective-bargaining agreement specifically negated the statutory rights of a civil service employee to reinstatement following layoff.

{¶ 10} Effective July 1, 2010, the position of operations superintendent became vacant because Mazzochi retired. On June 10, 2010, the city posted a notice of the upcoming job opening. Around mid-June, Tempesta asked to fill the operations-superintendent position. But based on its interpretation of Article 21 of the collective-bargaining agreement, the city appointed Pat Calvey to the position effective July 1, 2010. Calvey has served in that position since the appointment.

{¶ 11} On July 1, 2010, Tempesta filed this action for a writ of mandamus to compel Warren to reinstate him to the position of operations superintendent. Tempesta also requested damages, which he later clarified to mean back pay. Following an unsuccessful attempt at mediation, the city filed an answer, and we

3

granted an alternative writ. *State ex rel. Tempesta v. Warren*, 126 Ohio St.3d 1614, 2010-Ohio-5101, 935 N.E.2d 853. The parties have submitted evidence and briefs, and Ohio Council 8, AFSCME, AFL-CIO has submitted an amicus curiae brief in support of the city.

{¶ 12} This cause is now before this court for our consideration of the merits.

### Legal Analysis

#### *Mandamus*

{¶ 13} To be entitled to the writ, Tempesta must establish a clear legal right to be appointed to the position of operations superintendent in the Warren Operations Department, a corresponding clear legal duty on the part of the city to appoint him, and the lack of an adequate remedy in the ordinary course of law. See *State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124, 2010-Ohio-2671, 931 N.E.2d 110, ¶ 7.

#### *Legal Right and Legal Duty*

{¶ 14} Under R.C. 124.327(B), an employee who is laid off retains reinstatement rights for one year following the date of layoff. "During this one-year period, in any layoff jurisdiction in which an appointing authority has an employee on a layoff list, the appointing authority shall not hire or promote anyone into a position within that classification until all laid-off persons on a layoff list for that classification who are qualified to perform the duties of the position are reinstated or decline the position when it is offered." R.C. 124.327(B).

{¶ 15} Within a year after Warren laid off Tempesta as the director of service operations of its Operations Department, the city had a vacancy for the position of operations superintendent in the same classification series as Tempesta's former position in its Operations Department, but it hired someone else without first offering the position to Tempesta.

{¶ 16} The city and the union argue that because the collective-bargaining agreement justified the city's promotion of bargaining-unit member Calvey to the position of operations superintendent, the agreement preempted Tempesta's right to the position under the reinstatement provisions under R.C. 124.327.

{¶ 17} "In order to negate statutory rights of public employees, a collective bargaining agreement must use language with such specificity as to explicitly demonstrate that the intent of the parties was to preempt statutory rights." *State ex rel. Ohio Assn. of Pub. School Emps./AFSCME, Local 4, AFL-CIO v. Batavia Local School Dist. Bd. of Edn.* (2000), 89 Ohio St.3d 191, 729 N.E.2d 743, syllabus; *State ex rel. Couch v. Trimble Local School Dist. Bd. of Edn.*, 120 Ohio St.3d 75, 2008-Ohio-4910, 896 N.E.2d 690, ¶ 23. Nothing in Article 21 of the collective-bargaining agreement, which contains general provisions concerning promotions, or any other provision of the agreement, specifically negates the statutory rights of bargaining-unit employees to reinstatement following layoff, much less the statutory rights of city employees like Tempesta who were not members of the bargaining unit at the time they were laid off. Therefore, as precedent requires, the collective-bargaining agreement did not preempt Tempesta's right to reinstatement in the Warren Operations Department under R.C. 124.327.[1]

{¶ 18} The city next argues that Tempesta's statutory right to employment in the operations-superintendent position is inferior to O'Brien's right under the same statute because O'Brien had more seniority in the "Director of Service Operations, Operations Superintendent, and Parks and Streets Supervisor" classification series than Tempesta.

---

1. R.C. 124.327(B) provides that "[f]or an exempt employee, as defined in section 124.152 of the Revised Code, who has reinstatement rights into a bargaining unit classification, the exempt employee's recall jurisdiction shall be the counties in which the exempt employee indicates willingness to accept reinstatement as determined by the applicable collective bargaining agreement." Because none of the parties argues that this provision is applicable to his mandamus claim, we need not address it.

{¶ 19} The city's argument lacks merit.  Under R.C. 124.327(A), "[l]aid-off employees shall be placed on layoff lists for each classification in the classification series equal to or lower than the classification in which the employee was employed at the time of layoff."  If O'Brien's reassignment from her position as parks and streets supervisor to a new position constituted a layoff from her position as parks and streets supervisor in the Operations Department of Warren, she would have been entitled to have been placed on the layoff list for only the parks-and-streets-supervisor classification, because the other two classifications in the series — director of service operations and operations superintendent — were higher than her classification.  Conversely, because Tempesta had been laid off from the highest classification in the series — director of service operations — he was entitled to be placed on the layoff lists for all three classifications, including operations superintendent.  R.C. 124.327(A).

{¶ 20} Therefore, Tempesta has established a clear legal right to be employed in the position of operations superintendent with Warren and a clear legal duty on the part of the city to so employ him.

*Lack of Adequate Remedy in the Ordinary Course of Law*

{¶ 21} "Mandamus will not issue if there is a plain and adequate remedy in the ordinary course of law."  *State ex rel. McClaran v. Ontario*, 119 Ohio St.3d 105, 2008-Ohio-3867, 892 N.E.2d 440, ¶ 15; R.C. 2731.05.

{¶ 22} The city claims that Tempesta is not entitled to the requested writ of mandamus because he has or had an adequate remedy in the ordinary course of law by way of the grievance and arbitration procedure in the collective-bargaining agreement.  "A grievance and arbitration procedure in a collective bargaining agreement generally provides an adequate legal remedy, which precludes extraordinary relief in mandamus, when violations of the agreement are alleged by a person who is a member of the bargaining unit covered by the agreement."

*State ex rel. Walker v. Lancaster City School Dist. Bd. of Edn.* (1997), 79 Ohio St.3d 216, 218, 680 N.E.2d 993.

{¶ 23} Tempesta does not have an adequate legal remedy by way of the grievance and arbitration procedure in the collective-bargaining agreement because his claim is based on statute rather than the agreement and he was not a member of the bargaining unit covered by the agreement.

{¶ 24} Moreover, although R.C. 124.34 authorizes an appeal to the municipal civil service commission from certain adverse employment decisions, the decisions that can be appealed do not include the wrongful failure to recall a laid-off employee.  See R.C. 124.34(B).

{¶ 25} Therefore, Tempesta has established that he lacks an adequate remedy in the ordinary course of law.

*Back Pay*

{¶ 26} Tempesta also requests an award of back pay.  "A wrongfully excluded public employee may obtain back pay and related benefits in a mandamus action following reinstatement or, in some cases, may obtain reinstatement and back pay and related benefits in the same mandamus action." *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.* (2001), 93 Ohio St.3d 558, 563, 757 N.E.2d 339.  Here, Tempesta requests an award of back pay in the same mandamus case in which he seeks reinstatement to employment with the city.

{¶ 27} To be entitled to recover compensation for the period of wrongful exclusion from employment, however, Tempesta is required to establish the amount of back pay "with certainty." *Monaghan v. Richley* (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462, syllabus; *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, ¶ 28.  The term "with certainty" generally refers to "whether a particular amount has been precisely determined as to its value in dollars and cents" and at

times "also refer[s] to the quality of proof, in order for an employee to demonstrate that he has a clear legal right to the relief for which he prays." *State ex rel. Hamlin v. Collins* (1984), 9 Ohio St.3d 117, 120, 9 OBR 342, 459 N.E.2d 520. Tempesta has introduced no evidence here that would satisfy the requisite standard of proof.

**{¶ 28}** Therefore, Tempesta is not entitled to an award of back pay.

### Conclusion

**{¶ 29}** Based on the foregoing, Tempesta has established his right to a writ of mandamus to compel the city of Warren to appoint him to the position of operations superintendent in the city's Operations Department. Therefore, we grant the writ. We deny the writ insofar as Tempesta seeks an award of back pay for which he has failed to satisfy his burden of proof.

Judgment accordingly.

O'DONNELL and CUPP, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., concur in granting the writ but would also award back pay to relator.

O'CONNOR, C.J., and LANZINGER and MCGEE BROWN, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

**{¶ 30}** I respectfully dissent and would deny the writ of mandamus because relator, Frank M. Tempesta, has not established either a clear legal right to appointment to the position of operations superintendent in the city of Warren's Operations Department or the city's clear duty to appoint him to that position. *State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124, 2010-Ohio-2671, 931 N.E.2d 110, ¶ 7.

**{¶ 31}** In failing to focus on the collective bargaining agreement that the city has entered into with Ohio Council 8, American Federation of State, County and Municipal Employees, AFL-CIO ("the union"), I believe the majority has

gone astray. It is well settled that when a collective bargaining agreement contains language related to the wages, hours, and terms and conditions of employment that is sufficiently specific to explicitly demonstrate that the intent of the parties was to preempt statutory rights, the contract language controls over the language of the conflicting statute. E.g., *State ex rel. Ohio Assn. of Pub. School Emps./AFSCME, Local 4, AFL-CIO v. Batavia Local School Dist. Bd. of Edn.* (2000), 89 Ohio St.3d 191, 729 N.E.2d 743, syllabus.

{¶ 32} R.C. 4117.10(A) provides: "An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * * Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees."

{¶ 33} Pursuant to R.C. 4117.08, matters affecting promotions are appropriate subjects of collective bargaining between a municipal corporation and an exclusive representative employee organization. See *DeVennish v. Columbus* (1991), 57 Ohio St.3d 163, 566 N.E.2d 668, paragraph two of the syllabus. Article 21 of the collective bargaining agreement between the city and the union addresses promotions: "The City agrees to post any job openings, on all Union bulletin boards, occurring within the bargaining unit for a period of ten (10) working days after the City determines there is a vacancy. *The qualified senior bargaining unit member shall be promoted.* If no qualified bargaining unit member bids, the Director of Public Service and Safety may fill the position at his/her discretion." (Emphasis added.)

{¶ 34} The collective bargaining agreement in this case thus has made a "specification about a matter," that is, about promotions. Article 21 explicitly

controlled how vacancies within the bargaining unit, which includes the position of operations superintendent, were to be filled. If a bargaining unit member bid for a vacant position, that member was to be promoted. Tempesta was never a member of the bargaining unit. He had no legal right to be placed into a vacant position unit for which a qualified bargaining unit member had applied. Nevertheless, Tempesta asserts that the city was legally obligated to appoint him because of R.C. 124.327, which requires the reinstatement of classified employees laid off within the previous year before a promotion or new hire is made in the relevant classification series.

{¶ 35} The position of operations superintendent became vacant upon David Mazzochi's retirement on July 1, 2010. On June 10, the city posted a notice of the upcoming job opening and eventually appointed bargaining unit member Pat Calvey to the position, effective July 1, 2010. Tempesta argues that because on July 1 he was in layoff status with the city, he was entitled to be reinstated and appointed as operations superintendent pursuant to R.C. 124.327, because the position of operations superintendent was in the same classification series as his former position.

{¶ 36} His proposition of law rests on the statement that "[i]n order to negate statutory rights of public employees, a collective bargaining agreement must use language with such specificity as to explicitly demonstrate that the intent of the parties was to preempt statutory rights." *Ohio Assn. of Pub. School Emps.,* 89 Ohio St.3d 191, 729 N.E.2d 743, at syllabus. He argues that Article 21 of the collective bargaining agreement between the city and the union does not specifically negate the statutory rights of bargaining unit employees to reinstatement following layoff, much less the statutory rights of nonunion city employees like him.

{¶ 37} But the case on which he relies is distinguishable. In *Ohio Assn. of Pub. School Emps.,* this court held that a school board did not have authority

under a collective bargaining agreement to abolish bus driver positions and then transfer the obligation to provide transportation to a private company. Id. at 195. Under those circumstances, the drivers, members of the union, retained their statutory protections under R.C. 3319.081, the statute that governs contracts for nonteaching school-district employees. R.C. 124.327 was not at issue. Unlike Tempesta's situation, the apparent conflict lay between the contractual and statutory rights of the members of the collective bargaining unit. Tempesta is not a member of the bargaining unit and the union itself has not filed any grievance under the collective bargaining agreement. In fact, here the union has filed a brief as amicus for the respondent city.

{¶ 38} I would hold that the city, in following its collective bargaining agreement, appropriately promoted Pat Calvey to the position of operations superintendent. Without establishing his own legal right to the appointment or a legal duty to appoint on the part of the city of Warren, relator, Frank Tempesta, has failed to show that he is entitled to a writ of mandamus.

O'CONNOR, C.J., and MCGEE BROWN, J., concur in the foregoing opinion.

_____

Guarnieri & Secrest, P.L.L., and Michael D. Rossi, for relator.

Gregory V. Hicks, Warren Law Director, and James R. Ries, Deputy Law Director, for respondent.

Bethany E. Sanders, Associate General Counsel, urging denial of the writ for amicus curiae, Ohio Council 8, AFSCME, AFL-CIO.

_____